**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
Lisa J. Rodriguez
8 Kings Highway West
Haddonfield, NJ 08003
856-795-9002

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PEARL E. LUCAS, individually and derivatively on behalf of COMMERCE BANCORP, INC. for Counts I, II and III; individually for Count IV; and on behalf of herself and others similarly situated for Counts V and VI, | : : : : : : : | Case No. 07-00349 (RBK/JS) |
| Plaintiff, | : : | |
| v. | : : | |
| VERNON W. HILL, II, for Counts I, II, III, and IV; JACK R. BERSHAD, JOSEPH BUCKELEW, DONALD T. DIFRANCESCO, MORTON N. KERR, STEVEN M. LEWIS, JOHN K. LLOYD, GEORGE E. NORCROSS, III, DANIEL J. RAGONE, WILLIAM A. SCHWARTZ, JOSEPH T. TARQUINI, JR., and JOSEPH S. VASSALLUZZO for Counts IV, V, VI, NICHOLAS A. GIORDANO for Counts V and VI, and TORONTO-DOMINION BANK for Counts VII, | : : : : : : : : : : : : | |
| Defendants, | : : | |
| and | : : | |
| COMMERCE BANCORP, INC. for Counts I, II, and III, | : : : | |
| Nominal Defendant. | : : | |

Additional Captions Follow.

| | | |
|---|---|---|
| SHEET METAL WORKERS' NATIONAL PENSION FUND, Derivatively on behalf of COMMERCE BANCORP, INC., | : : : | Case No. 07-cv-2269 (RBK) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| VERNON W. HILL, II, et al., | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| COMMERCE BANKCORP, INC., | : | |
| | : | |
| Nominal Defendant. | : | |

| | | |
|---|---|---|
| S.L. LERNER, Individually and derivatively on behalf of COMMERCE BANCORP, INC., | : : | Case No. 07-cv-3295 (RBK) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| VERNON W. HILL, II, et al., | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| COMMERCE BANCORP, INC., | : | |
| | : | |
| Nominal Defendant. | : | |

| | | |
|---|---|---|
| POLICE & FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT and LOUISIANA MUNICIPAL POLICE EMPLOYEES' RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated, | : : : : : : : | Case No. 07-cv-5905 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| COMMERCE BANCORP., INC., DENNIS M. DIFLORIO, ROBERT D. FALESE, JR., JACK R. BERSHAD, JOSEPH E. BUCKELEW, DONALD T. DIFRANCESCO, MORTON N. KERR, STEVEN M. LEWIS, JOHN K. LLOYD, GEORGE E. NORCROSS, III, DANIEL J. RAGONE, WILLIAM A. SCHWARTZ, JR., JOSEPH T. TARQUINI, JR., JOSEPH S. VASSALLUZO, and THE TORONTO-DOMINION BANK, | : : : : : : : : : : : : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND ...................................................................................................3

      A.    THE CLAIMS AT ISSUE ..........................................................................3

            1.    The Federal Derivative Claims ......................................................3

            2.    The Federal Class Claims Arising Out of the Proposed Merger ..............6

            3.    The State Court Class Action Arising Out of the Proposed
                  Merger ...........................................................................................9

      B.    THE MEDIATION ....................................................................................10

      C.    THE SETTLEMENT ................................................................................11

            1.    The Settlement Class ....................................................................11

            2.    The Settlement Terms ..................................................................12

            3.    The Release ..................................................................................13

III.  ARGUMENT ......................................................................................................15

      A.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY
            APPROVED ..............................................................................................15

            1.    The Standard For Preliminary Approval of Settlement ..........................15

            2.    The Proposed Settlement Meets the Standard for Preliminary
                  Approval ......................................................................................17

                  a.    The Settlement is the Product of Serious, Informed,
                        and Non-Collusive Negotiations ................................................17

                  b.    The Settlement Has No "Obvious Deficiencies" and Falls
                        Well Within the Range of Reasonableness for Approval ..........19

                  c.    The Settlement Does Not Improperly Grant Preferential
                        Treatment to Class Representative or Segments of
                        the Class ...........................................................................22

         d.     The Proceedings are Sufficiently Advanced to Permit
              Preliminary Approval of the Settlement ....................................22

  B.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ......................33

  C.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT
      CLASS ................................................................................................24

      1.     Rule 23(a) ....................................................................................26

      2.     Rule 23(b)(1) ...............................................................................29

      3.     Rule 23(b)(2) ...............................................................................30

IV.  CONCLUSION ...................................................................................................30

## TABLE OF AUTHORITIES

### CASES

*Amchem Products v. Windsor,*
    521 U.S. 591 (1997)..................................................................................................25, 27

*Baby Neal v. Casey,*
    43 F.3d 48 (3d Cir. 1994) ..........................................................................................26

*Bell Atlantic Corp. v. Bolger,*
    2 f.3d 1304, 1311 (3d. Cir. 1993) ............................................................................21

*Berlin v. Emerald Partners,*
    552 A.2d 482 (Del. 1988) ..........................................................................................28

*Carlough v. Amchem Product, Inc.,*
    158 F.R.D. 314 (E.D. Pa. 1993)................................................................................16

*Cohn v. Nelson,*
    375 F. Supp. 2d 844 (E.D. Mo. 2005).......................................................................15

*Glauser v. EVCI Cir. Colls. Holding Corp.,*
    236 F.R.D. 184 (S.D.N.Y. 2006) ..............................................................................29

*Godshall v. Franklin Mint Co.,*
    2004 U.S. Dist. LEXIS 23976, at *9 (E.D. Pa. Dec. 1, 2004) ....................................29

*Hall v. Midland Group,*
    1999 U.S. Dist. LEXIS 17832 (E.D. Pa. Nov. 22, 1999).............................................25

*Heilbrunn v. Hanover Equities Corp.,*
    259 F. Supp. 936, 939 (S.D. N.Y. 1966)...................................................................28

*In re 3COM Corp.,*
    1999 Del. Ch. LEXIS 215 (Del. Ch. Oct. 25, 1999)...................................................28

*In re Automobile Refinishing Paint Antitrust Litigation,*
    MDL No. 1426, 2006 U.S. Dist. LEXIS 93936 (E.D. Pa. Dec. 28, 2006) ..................16

*In re Bulk [Extruded] Graphite Prods. Antitrust Litig.,*
    2006 U.S. LEXIS 16619 (D. N.J. Apr. 4, 2006).........................................................27

*In re Cardizem CD Antitrust Litigation,*
    218 F.R.D. 508 (E.D. Mich. 2003) ...........................................................................18

*In re Chambers Development Co. Securities Litigation,*
   912 F. Supp. 822 (W.D. Pa. 1995)................................................................24

*In re Cigna Corp. Security Litigation,*
   2007 U.S. Dist. LEXIS 51089 (E.D. Pa. July 13, 2007)............................18

*In re Corel Corp. Security Litigation,*
   206 F.R.D. 533 (E.D. Pa. 2002)...........................................................25, 26

*In re Corel Corp. Security Litigation,*
   293 F. Supp. 2d 484 (E.D. Pa. 2003) .......................................................16

*In re Dayco Corp. Derivative Securities Litigation,*
   102 F.R.D. 624 (S.D. Ohio 1984)..............................................................28

*In re Flat Glass Antitrust Litigation,*
   191 F.R.D. 472 (W.D. Pa. 1999) ...............................................................27

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation,*
   55 F.3d 768 (3d Cir. 1995)..................................................................15, 16

*In re Golden State Bancorp Inc. S'holders Litigation,*
   2000 Del. Ch. LEXIS 8 (Del. Ch. Jan. 7, 2000) .......................................21

*In re IKON Office Solutions, Inc. Sec. Litig.,*
   191 F.R.D. 457, 466 (E.D. Pa. 2000).........................................................29

*In re Insurance Brokerage Antitrust Litigation,*
   2007 U.S. Dist. LEXIS 65037 (D.N.J. Sept. 4, 2007) ................................25

*In re Linerboard Antitrust Litig.,,*
   203 F.R.D. 197 (E.D. Pa. 2001).................................................................27

*In re Linerboard Antitrust Litigation,*
   292 F. Supp. 2d 631 (E.D. Pa. 2003) .......................................................17

*In re Mid-Atlantic Toyota Antitrust Litigation,*
   564 F. Supp. 1379 (D. Md. 1983)..............................................................16

*In re Plastic Cutlery Antitrust Litigation,*
   *No. Civ. 96-CV-728,* 1998 U.S. Dist. LEXIS 3628 (E.D. Pa. Mar. 20, 1998).............27

*In re Prudential Insurance Co. America Sales Practice Litigation Agent Actions,*
   148 F.3d 283 (3d Cir. 1998), *cert. denied* 525 U.S. 1114 (1999)................26

*In re Traffic Executive Associate -- Eastern Railroads,*
    627 F.2d 631 (2d Cir. 1980)...................................................................................24

*In re Triarc Cos., Inc. Class and Deriv. Litigation,*
    791 A.2d 872 (Del. Ch. 2001)..............................................................................21

*In re Tyson Foods, Inc.,*
    919 A.2d 563 (Del. Ch. 2007)..............................................................................28

*In re Warfarin Sodium Antitrust Litigation,*
    391 F.3d 516 (3d Cir. 2004)...........................................................................15, 16

*In re Xcel Energy, Inc.,*
    364 F. Supp 2d 980 (D. Minn. 2005)....................................................................16

*Jones v. Commerce Bancorp., Inc.,*
    No. 05-5600, 2007 U.S. Dist. LEXIS 52144 (D.N.J. July 16, 2007)..........................16

*Lee v. Engle,*
    1995 Del. Ch. LEXIS 149 (Del. Ch. Dec. 15, 1995) ................................................28

*Lewis v. Great W. United Corp.,*
    1978 Del. Ch. LEXIS 723 (Del. Ch. Mar. 28, 1978)...........................................28, 29

*Martens v. Smith Barney, Inc.,*
    181 F.R.D. 243 (S.D.N.Y. 1998) .....................................................................18, 19

*Mehling v. New York Life Insurance Co.,* No. 99-5417,
    2007 U.S. Dist. LEXIS 79451 (E.D. Pa.  Oct. 25, 2007)....................2, 16, 26, 29, 30

*Philadelphia Housing Authority v. America Radiator & Standard Sanitary Corp.,*
    323 F. Supp. 364 (E.D. Pa. 1970) .......................................................................2, 3

*Phillips Petroleum v. Shutts,*
    472 U.S. 797 (1985).........................................................................................24

*Rankin v. Rots,*
    220  F.R.D. 511 (E.D. Mich. 2004) .......................................................................29

*Rolland v. Cellucci,*
    191 F.R.D. 3 (D. Mass. 2000).............................................................................18

*Smith v. Prof'l Billing & Management Services, Inc.,*
    2007 U.S. Dist. LEXIS 86189 (D.N.J. Nov. 21, 2007)..............................................19

*TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.,*
  2000 Del. Ch. LEXIS 147 (Del. Ch. Oct. 17, 2000)....................................................28

*Thomas v. NCO Fin. Sys.,*
  2007 U.S. Dist. LEXIS 14157, at *14 (E.D. Pa. July 31, 2002)...................................17

*United National Retirement Fund v. Watts,*
  2005 U.S. Dist. LEXIS 26246 (D.N.J. 2005) ........................................................20, 21

*Zimmer Paper Product, Inc. v. Berger & Montague P.C.,*
  758 F.2d 86 (3d Cir. 1985), *cert. denied*, 474 U.S. 902 (1985)..................................25

## OTHER AUTHORITIES

NEWBERG ON CLASS ACTIONS ...................................................................................2

MANUAL FOR COMPLEX LITIGATION ......................................................................2

## I.    INTRODUCTION

Plaintiffs[1] submit this memorandum in support of their motion for preliminary approval

of a proposed settlement with Defendants Commerce Bancorp, Inc. ("Commerce" or

"Company"), The Toronto-Dominion Bank ("TD Bank"), Jack R. Bershad, Joseph E. Buckelew,

Dennis M. DiFlorio, Donald T. DiFrancesco, Robert D. Falese, Jr., Nicholas A. Giordano,

Morton N. Kerr, Steven M. Lewis, John K. Lloyd, George E. Norcross III, Daniel J. Ragone,

William A. Schwartz, Jr., Joseph T. Tarquini, Jr., and Joseph S. Vassalluzzo (together, the

"Settling Defendants") (the "Settlement").  The proposed Stipulation of Settlement

("Stipulation," attached hereto as Exhibit A) provides substantial benefit to the Class in the form

of (1) substantial revisions to the Preliminary Proxy filed with the SEC, which will allow

shareholders (based on the final Proxy filed with the SEC on January 4, 2008) to make an

informed decision regarding whether to support Commerce's potential merger with TD Bank;

and (2) the modification of the merger agreement terms, resulting in a reduction of the break up

or "termination" fees from $332 to $255 million, and a reduction of the "tail" from 15 months to

12 months.  In addition, Class Members benefit from the settlement of derivative claims brought

on behalf of Commerce, which have helped spur a significant change to Commerce's corporate

governance and related procedures.  The Settlement also benefits Commerce shareholders (who

will become TD Bank shareholders if the merger is approved) by setting forth and preserving

claims against former Commerce Chairman Vernon Hill, II ("Hill").

---

[1] "Plaintiffs" include Pearl E. Lucas, Sheetmetal Workers' National Pension Fund and S.L.
Lerner (the "Derivative Plaintiffs"), on their own behalf and in their capacity as derivative
plaintiffs in the consolidated action captioned *Lucas v. Hill*, Civil Action No. 1:07-cv-00349; the
Louisiana Municipal Police Employees' Retirement System ("LAMPERS") and Police & Fire
Retirement System of the City of Detroit ("Detroit Police & Fire") (collectively the "Class
Plaintiffs"), on their own behalf and on behalf of a purported class of the public stockholders of
Commerce Bancorp, Inc., that has asserted claims in the consolidated *Lucas* actions in *In re
Commerce Bancorp, Inc. Shareholders Litigation*, Docket No. CAM-L-5101-07 (Sup. Ct. N.J.).

The Settlement was negotiated by Co-Lead Counsel for the Plaintiffs, Liaison Counsel and Lead Counsel for the Plaintiffs in the State Action on behalf of all the plaintiffs and the lead Defendants' counsel, ably assisted by retired federal Magistrate Judge Joel Rosen acting as Mediator in the context of substantial uncertainty in the banking and financial services industries. Counsel negotiated at arms' length and in recognition of the respective strengths and weaknesses of their clients' positions.

The Settlement is well within the range of possible approval and reflects such strengths and weaknesses. As such, the Court should grant preliminary approval of the Settlement and authorize the dissemination of the proposed notice to the Class (as defined in Section II.C.1). The Court should also certify the proposed Class for settlement purposes only, approve the Notice Plan and schedule a hearing on final approval of the Settlement.

When a proposed class-wide settlement is reached, it must be submitted to the court for approval. 2 H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS (4th ed. 2002) ("Newberg") at § 11.41, p. 89. Preliminary approval is the first of three steps that comprise the approval procedure for the settlement of a class action. The second step is the dissemination of notice of the settlement to all class members. The third step is a final settlement approval (or "fairness") hearing. *See* MANUAL FOR COMPLEX LITIGATION, § 21.63 (2004).

While the final approval of a class action or a derivative settlement depends on whether the settlement is "fair, adequate and reasonable," the question presented on a motion for preliminary approval is whether the proposed settlement is "within the range of possible approval" sufficient to justify the expense of notifying the class of the proposed settlement. *See Mehling v. New York Life Ins. Co.*, No. 99-5417, 2007 U.S. Dist. LEXIS 79451, at *6 (E.D. Pa. Oct. 25, 2007). Preliminary approval is merely the prerequisite to giving notice so that "the

proposed settlement … may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970). The proposed Settlement in this case, which provides, among other things, for additional disclosures of material facts relevant to the pending merger proposal, reduction of the termination fee and "tail" period and preservation of claims against Hill, his family members and their affiliates, will benefit both Class members and Commerce alike, and is well within the range of reasonableness that warrants preliminary (and ultimately final) approval.

Before entering into the Settlement, the parties also completed significant, albeit expedited, discovery, targeted at key issues. As a result, all Plaintiffs' Counsel are in an excellent position to assess the benefits of the proposed Settlement relative to the risks of continued litigation. These factors further support a finding that the proposed Settlement is adequate, fair and reasonable, and that it warrants preliminary approval by the Court.

## II.    BACKGROUND

### A.    THE CLAIMS AT ISSUE

#### 1.    The Federal Derivative Claims

On January 16, 2007, Commerce revealed that federal regulators had opened an investigation into the Company's transactions with bank insiders. The Company indicated that the probe was being conducted by the Office of the Controller of Currency (the "OCC") in conjunction with the Board of Governors of the Federal Reserve System. At the time, Commerce said that it had been informed by regulators that the scope of the investigation was going to focus on transactions with its officers, directors and related parties.

On January 22, 2007, Commerce shareholder Pearl E. Lucas ("Lucas") commenced a

3

stockholder's derivative action pursuant to Rule 23.1 of the Federal Rules of Civil Procedure on behalf of Commerce as the Nominal Defendant. *See Lucas v. Hill, et al.*, Case No. 07-0349 (D.N.J.) at Doc. 1.  Plaintiff Lucas's Complaint named Hill as a defendant and sought a recovery under New Jersey common law for breaches of fiduciary duty, including the duties of good faith, loyalty and full disclosure, gross mismanagement, waste of corporate assets and abuse of control based on the actions being investigated by federal authorities. *See id.*

Shortly after filing her Complaint, counsel for plaintiff Lucas began discussions with counsel for Commerce about managing the litigation in order to avoid, *inter alia*, unnecessary and burdensome motion practice.  Based on these discussions, three separate Stipulations and Orders were entered extending the time for Commerce to respond to plaintiff Lucas's Complaint so that the parties could negotiate a pre-trial case management stipulation to put in place appropriate procedures to manage the litigation including a protective Order dealing with legitimately confidential documents and information. *See id.* at Docs. 12, 15, 17.

On May 11, 2007, a Stipulation to Stay the Proceedings was filed. *Id.* at Doc. 20.  Under the terms of the Stipulation to Stay the Proceedings, which was "So Ordered" by the Court on May 15, 2007, Commerce agreed to provide plaintiff Lucas's counsel with certain documents as well as the opportunity to meet with Commerce's so-called Special Litigation Committee ("SLC"). *See id.* at Doc. 21.  The SLC had been formed by Commerce's Board, purportedly to review the related party transactions at issue in the OCC's investigation and plaintiff Lucas's action, as well as to deal with other issues raised by certain other Commerce shareholders.

On May 15, 2007, Commerce shareholder Sheetmetal Workers' National Pension Fund ("Sheetmetal Workers") filed a derivative Complaint against Hill, as well as Commerce directors George E. Norcross, III, Jack R. Bershad, Joseph Buckelew, Donald T. DiFrancesco, Morton N.

Kerr, Steven M. Lewis, John K. Lloyd, Daniel J. Ragone, William A. Schwartz, Joseph T. Tarquini, Jr., and Joseph S. Vassalluzzo seeking recovery on behalf of Commerce and asserting claims against these defendants for breach of fiduciary duty and unjust enrichment under New Jersey common law (including claims that these directors had failed to adequately protect Commerce shareholders from Hill's self-dealing transactions with Commerce). *See Sheetmetal Workers' National Pension Fund v. Hill, et al.*, Case No. 07-2269 (D.N.J.) at Doc. 1. The allegations in the Sheetmetal Workers' Complaint addressed the same subject matter as plaintiff Lucas's Complaint. *See generally, id.*

On June 29, 2007, Commerce announced that it had entered into a Consent Order with the OCC, which related to, *inter alia*, corporate governance, related party transactions and policies and procedures for real estate-related transactions that were perpetuated by Hill, his family and their respective affiliates. In addition, on June 29, 2007, it was also announced that the Federal Reserve Bank of Philadelphia (the "FRB") and Commerce entered into a memorandum of understanding with respect to certain of such transactions. Pursuant to this memorandum of understanding, Commerce's Board agreed to, among other things, take all actions necessary to ensure that the Company complied fully with the Consent Order. Under the terms of the Consent Order, the Company was required to initiate certain governance changes to eliminate the related party transactions that were prevalent throughout Hill's reign at Commerce and provide periodic reports to federal banking regulators. The Company also announced that Hill would relinquish each of the positions he held at Commerce.

On July 17, 2007, Commerce shareholder S.L. Lerner ("Lerner") filed a third derivative complaint on behalf of Commerce. *See Lerner v. Hill et al.*, Case No. 07-3295 (D.N.J.) at Doc. 1. The *Lerner* Complaint asserted a claim under Section 14(a) of the Exchange Act of 1934, in

addition to derivative claims based upon, *inter alia*, the same underlying wrongdoing as alleged

by plaintiffs Lucas and Sheetmetal Workers. *Id.* Plaintiff Lerner had previously made a pre-suit

demand on Commerce's Board of Directors to commence litigation against the alleged

wrongdoers. The demanded litigation was never commenced by Commerce and, as such, was

deemed rejected.

In September 2007, after the Court denied the Sheetmetal Workers' motion for a

temporary restraining order to prevent Commerce from providing Hill with a substantial

severance payment, the Court entered an order staying the actions pending completion of a report

on the derivative claims by the Gibbons Firm on behalf of the SLC. *See Lucas*, at Docs. 24 and

26. These orders also consolidated, for discovery purposes, the *Lucas*, *Sheetmetal Workers* and

*Lerner* actions. In the interim, counsel for the federal plaintiffs met with Commerce's and the

SLC's counsel to continue to exchange information and actively litigate the derivative claims.

### 2.    The Federal Class Claims Arising Out of the Proposed Merger

On October 2, 2007, two months after the Company announced the resolution of the

investigation by federal regulators and Hill's departure, Commerce announced that it was being

acquired by TD Bank in a merger transaction, for a combination of cash and TD Bank stock with

a value as of the date of the announcement of approximately $8.5 billion (the "Merger"). Under

the terms of the Agreement and Plan of Merger ("Merger Agreement"), Commerce stockholders

would receive slightly over four-tenths of a share (0.4142) of TD Bank stock, plus $10.50 in

cash, for each Commerce share held.

On November 13, 2007, the Company filed a Schedule 14A Preliminary Proxy Statement

(the "Preliminary Proxy") with the United States Securities and Exchange Commission ("SEC")

to solicit Commerce shareholders' votes on the Merger. The Preliminary Proxy contained a copy

of the Merger Agreement as well as a narrative that supposedly detailed the process in which the Merger was negotiated. Under the terms of the Merger Agreement, Commerce's Board of Directors agreed to a termination fee of $332 million that Commerce would owe TD Bank if the merger was not completed, and if Commerce consummated a different strategic transaction within a "tail period" of 15 months.[2]

Following the filing of the Preliminary Proxy, and consistent with the Stipulation to Stay the Proceedings, plaintiff Lucas filed a Motion for Leave to File an Amended Complaint on October 19, 2007 containing allegations regarding the Preliminary Proxy. *See Lucas*, at Doc. 28. By Order dated November 21, 2007 (Doc. 31), the Court (Schneider, M.J.) allowed plaintiff Lucas to file her proposed Amended Complaint, which she did the same day. *Id.* at Doc. 32.

In her Amended Complaint, Plaintiff Lucas continued to assert her derivative claims against defendant Hill on behalf of Commerce, but added an individual claim and Class claims against other defendants relating to the current Board of Directors' negotiation and approval of the Merger.[3] Magistrate Judge Schneider further ordered on November 21, 2007 that the stay, previously extended until the SLC rendered its report as to the alleged interested person transactions, would be lifted with regard to the class claims brought against the current Commerce Board in connection with the Merger. *Id.* at Doc. 31.

On December 4, 2007, plaintiff Lucas filed a motion for preliminary injunction seeking to prevent Defendants from soliciting shareholder approval of the Merger using a materially false

---

[2] Such a termination fee is commonly used in transactions such as the Merger in order to compensate the acquirer if the negotiated transaction were not to be consummated and, as well, to deter other prospective bidders from making a counter-proposal to the acquiree since the fee payable to the acquirer would increase the price to the prospective over-bidder.

[3] On December 21, 2007, plaintiff Lucas filed a Second Amended Complaint which included a separate class claim against Toronto Dominion for knowingly aiding and abetting defendants' breach of fiduciary duty with regard to the Merger. *See Lucas*, at Doc. 48.

and misleading proxy statement. *Id.* at Doc. 36. In particular, plaintiff Lucas's motion alleged that Defendants failed to fully disclose numerous material facts that would enable reasonable stockholders to make informed decisions as to whether they should approve the Merger. These disclosure failures included, *inter alia*, inadequate disclosures regarding defendant Norcross's role in the negotiated transaction, and inadequate and misleading disclosures concerning Commerce's Board's process for evaluating the terms of the Merger. *See generally*, *id.*[4]

The Court set a hearing date of January 11, 2008 on the preliminary injunction motion and the parties in the consolidated federal action agreed to a schedule for expedited discovery. *Id.* at Doc. 44. This expedited discovery included three separate depositions during the week of December 17, 2007, along with the production and review of approximately 8,000 pages of documents produced in response to discovery requests that were focused on obtaining documents relevant to obtaining an understanding of the proposed transaction and the process that led to it. Defendants Commerce and TD Bank, as well as Commerce's financial advisor Goldman Sachs, produced, *inter alia*, business plans, board minutes, reports to the Board of Directors, reports reflecting Goldman Sachs' analyses, and the relevant emails and communications. The parties contested the scope of the document review process, negotiated extensively over its scope, and turned to Magistrate Judge Schneider when issues arose.

As part of the discovery process, and in anticipation of presenting evidence at the scheduled January 11, 2008 hearing on the preliminary injunction motion, Plaintiffs also took depositions of three key witnesses: (1) George Norcross, chair of Commerce's Special Committee and lead negotiator for Commerce as well as one of the defendants; (2) Riaz Ahmed, head of TD Bank's Corporate Development deal team for the transaction; and (3) Peter Enns,

---

[4] A supplemental identification of disclosures deficiencies in the Preliminary Proxy was also filed on December 26, 2007. *See Lucas*, at Doc. 50.

senior member of the Goldman Sachs team advising Commerce on the transaction. Each witness was involved integrally in the negotiation and evaluation of the proposed transaction.

### 3.   The State Court Class Action Arising Out of the Proposed Merger

Following the announcement of the Merger in October, a number of Commerce shareholders filed ten separate class actions in New Jersey state court alleging that the Commerce Board of Directors had breached their fiduciary duties in connection with the Merger, and that TD Bank aided and abetted these breaches. Several of the state court complaints specifically alleged that one of the reasons for the merger was to attempt to extinguish the derivative claims previously asserted by the Derivative Plaintiffs. Discovery requests were served by certain of the plaintiffs in such actions. By Order dated November 12, 2007, the Honorable John Fratto appointed LAMPERS and Detroit Police & Fire, as the Lead Plaintiffs, and LAMPERS' and Detroit Police & Fire's counsel as Lead Counsel, for the consolidated State Court Action.[5]

On December 11, 2007, the state court granted Defendants' motion to stay the State Court Action in deference to the pending federal action.[6] In his opinion, Judge Fratto concluded, *inter alia*, that no conflict under the specific facts of this case prevented plaintiffs Lucas, Sheetmetal Workers and Lerner from bringing both derivative claims on behalf of Commerce as a nominal defendants and class claims challenging the terms of the Merger.

Immediately after Judge Fratto issued his ruling staying the State Court Action, on December 11, 2007, LAMPERS and Detroit Police & Fire re-filed their putative class claims for breach of fiduciary duty against the Commerce defendants (as well as their class claims for

---

[5] A true and correct copy of Judge Fratto's November 12, 2007 order is attached hereto as Exhibit B.

[6] A true and correct copy of Judge Fratto's December 11, 2007 opinion is attached hereto as Exhibit C.

aiding and abetting breaches of fiduciary duties against TD Bank) in federal court. *See Police & Fire Retirement System of the City of Detroit et al. v. Commerce Bancorp, Inc., et al.*, Case No. 07-5905 (D.N.J.) ("*Police & Fire*") at Doc. 1. On December 19, 2007, the *Police & Fire* case was consolidated for discovery purposes with the *Lucas*, *Sheetmetal Workers* and *Lerner* cases, *id.* at Doc. 6, but even prior to that date counsel for Defendants and the *Lucas*, *Sheetmetal* and *Lerner* plaintiffs had reached agreement to allow the counsel for LAMPERS and the Detroit Police & Fire to obtain copies of all documents produced in the Federal Action and to participate in the depositions previously discussed. As a result, the Lead Plaintiffs in the consolidated State Court Action participated fully in the expedited discovery in the Federal Action.

## B.     THE MEDIATION

In late December 2007, after the close of the expedited discovery, and in advance of the scheduled injunction hearing, the parties began seriously discussing the possibility of settlement. The parties selected retired United States Magistrate Judge Joel B. Rosen, an experienced and well-respected mediator, to oversee arms' length discussions regarding a potential settlement. A mediation session among Plaintiffs' Counsel and Defendants' counsel was held with Judge Rosen on December 28, 2007. Plaintiffs were represented at this mediation by counsel for Plaintiffs Lucas, Sheetmetal Workers, LAMPERS, and Detroit Police & Fire. In preparation for this mediation, Plaintiffs' Counsel prepared and submitted a written mediation statement for Judge Rosen's review that addressed various liability and damages issues concerning both the class and derivative claims. In addition, prior to the mediation (as well as during the preceding discovery period), Plaintiffs' Counsel consulted with their own retained financial expert concerning the strengths and weaknesses of their claims. In short, the mediation proceedings were conducted based on a well-developed understanding of the strengths and weaknesses of the

claims at issue.

The discussions during this mediation concerned, *inter alia*, Plaintiffs' Counsel's demands that the Preliminary Proxy provide further information to Commerce stockholders, and that various deal terms in the Merger Agreement be modified. During the mediation session, the parties exchanged additional information about their positions, and Defendants provided additional information about the negotiations of the proposed transaction and its structure. The mediation session ended without an agreement. Following the December 28th mediation session, with Magistrate Judge Rosen's encouragement, the parties continued their arms' length negotiations. Counsel for the parties held additional discussions on December 29th, 30th and 31st. On December 31, 2007, the parties reached an agreement-in-principle to settle both the Federal Actions and the State Court Actions. A memorandum of understanding detailing the global settlement was executed on January 4, 2008. On January 22, 2008, the parties agreed upon and executed the Stipulation.

### C.    THE SETTLEMENT

The material terms of the Settlement are summarized below.

#### 1.    The Settlement Class

The Stipulation defines the Settlement Class as follows:

> All record and beneficial holders of common stock of Commerce at any time from October 2, 2007 through the consummation of the Merger, and their respective heirs, executors, administrators, representatives, agents, successors, transferees and assigns (excluding Settling Defendants, Mr. Hill, and/or any person, firm, trust, corporation or other entity who is a family member of Mr. Hill or an affiliate of the Settling Defendants or Mr. Hill as the term "affiliate" is defined in the Securities and Exchange Act of 1934 and SEC Rule 12b-2 promulgated thereunder).

Stipulation, attached as Exhibit A, at ¶ 5. Plaintiffs believe that the Settlement Class, as defined above, includes thousands of members.

## 2.      The Settlement Terms

The Settlement resolves the derivative and Class claims. Commerce has, among other things, reviewed certain transactions between Commerce and Defendant Hill, including causing the formation of a Special Litigation Committee ("SLC") invested with the authority to investigate any claims involving Hill. Commerce has taken various actions regarding its corporate governance, including actions to change and improve its internal procedures related to interested and related party transactions. These changes include the establishment of a Real Estate Committee of the Board of the Directors and a review of all transactions with InterArch, Inc., a corporation controlled by Shirley Hill, the wife of Hill.

In this regard, Commerce, based on information supplied by Derivative Plaintiffs, has asserted its right against InterArch and others to recover $1.6 million in overpayment. Also, the derivative actions have helped identify and preserve potential claims against Hill, members of his family and their affiliates. Under the terms of the Settlement, Commerce, and then TD Bank, will be responsible for pressing these claims. Inasmuch as Hill has sued Commerce and certain of its directors for $50 million, this part of the Settlement provides an important benefit.

The parties agreed, among other things, that the Schedule 14A Proxy Statement which was filed on January 4, 2008 (the "Final Proxy") seeking shareholder approval of the Merger, would include significant revisions to include additional material disclosures.[7] The disclosures amplify the disclosures of the role that Defendant Norcross played in the negotiation of the proposed transaction and his interest in purchasing Commerce's insurance brokerage subsidiary, Commerce Banc Insurance Services, Inc. ("CBIS"). In addition, the parties agreed that the Merger Agreement would be modified to provide that the Merger's termination fee would be

---

[7] A redlined version of the edits made to the Preliminary Proxy is attached hereto as Exhibit D.

reduced from $332 million to $255 million and that the 15-month tail period (during which the termination fee would be payable in the event that Commerce agreed to a different acquisition proposal) would be reduced to a 12-month period.

### 3.   The Release

The Stipulation provides that, subject to the Court's approval, the Federal Action shall be dismissed with prejudice as to all Settling Defendants, and without prejudice as to Hill, and without fees or costs, except as expressly provided in the Stipulation.  Stipulation, attached as Exhibit A, at ¶ 3.  Except for the Hill claims, any and all claims, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, judgments, suits, matters and issues of any kind or nature whatsoever that exist as of the execution of the Stipulation, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, that have been or could have been asserted in the Federal Action or State Action or in any court, tribunal or proceeding, including, but not limited to, any claims arising under federal or state law relating to alleged fraud, breach of any duty, negligence or violations of the federal or state securities laws and that arise under the same operative facts alleged in the Federal Action and the State Action by or on behalf of the Releasing Parties[8] against all Released Persons,[9] except claims to enforce the Settlement (collectively, the "Settled Claims") are hereby completely discharged as to the Released Persons; dismissed with prejudice against the Released Persons; and settled,

[8] "Releasing Parties" are defined as the Plaintiffs in the Federal Action and any and all of the members of the Class, whether individual, class, derivative, representative, legal, equitable or any other type or in any other capacity.

[9] "Released Persons" are defined as Settling Defendants in the Federal Action, and/or any of their families, parent entities, associates, affiliates or subsidiaries and each and all of their respective past, present or future officers, directors, stockholders, representatives, employees, attorneys, financial or investment advisors, consultants, accountants, investment bankers, commercial bankers, insurers, engineers, advisors or agents, heirs, executors, trustees, general or limited partners or partnerships, personal representatives, estates, administrators, and each of their respective predecessors, successors and assigns (but excluding Hill).

enjoined, and released as to the Released Persons. *Id.* In agreeing to the dismissal of the claims asserted derivatively on behalf of Commerce pursuant to the terms of the Stipulation, Derivative Plaintiffs do not acknowledge the independence or dis-interestedness of the SLC, its members or their counsel. The Settling Defendants further agree that any and all claims they may have or could have asserted against Plaintiffs and Plaintiffs' Counsel arising out of or related to the initiation, prosecution, and/or settlement of the Federal Action and State Action whatsoever that exist of the execution of this Stipulation are hereby completely released and enjoined as to the Plaintiffs and Plaintiffs' Counsel. *Id.*

The release contemplated by the Settlement extends to claims relating to the subject matter of the Federal and State Actions that Plaintiffs, for themselves and on behalf of the Class, Commerce, and its stockholders, do not know or suspect to exist through and including the execution of this Stipulation, which if known, might have affected the decision to enter into the release ("unknown claims") with respect to the Settling Defendants. *Id.* at ¶ 13. The Plaintiffs, each member of the Class, Commerce and its stockholders shall be deemed to waive any and all provisions, rights and benefits conferred by any law of the United States or any state or territory of the United States, or principle of common law, which governs or limits a person's release of unknown claims. *Id.* In connection with the Stipulation, the Plaintiffs, for themselves and on behalf of the Class, Commerce and its stockholders, shall be deemed to relinquish, to the full extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR

*Id.*[10]  Plaintiffs, for themselves and on behalf of the Class, Commerce and its stockholders,

acknowledge that members of the Class and/or other Commerce stockholders may discover

facts in addition to or different from those that they now know or believe to be true with

respect to the subject matter of this release, but that it is their intention, as Plaintiffs and on

behalf of the Class, Commerce and its stockholders, to fully, finally and forever settle and

release any and all claims released hereby known or unknown, suspected or unsuspected,

which now exist, or heretofore existed, through and including the date of execution of the

Stipulation, and without regard to the subsequent discovery or existence of such additional or

different facts.  *Id.*[11]

## III.   ARGUMENT

### A.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED.

#### 1.   The Standard For Preliminary Approval of Settlement

Settlements of disputed claims, especially those of complex class action litigation, are

clearly favored by the courts.  *See In re General Motors Corp. Pick-Up Truck Fuel Tank Prods.*

*Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995).[12]  The decision to approve a settlement is committed to

---

[10] In addition, the Plaintiffs, for themselves and on behalf of the Class, Commerce and its stockholders, also shall be deemed to waive any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542 that exist through and including the date of execution of the Stipulation. *Id.*

[11] Further, the State Plaintiffs will notify the State Court of this Settlement, and will request that the stay in the State Action remain in place while the Settlement approval process takes place in the Federal Action, and, if the Federal Court approves the Settlement, will file a stipulation dismissing the State Action with prejudice within two (2) business days of entry of an Order and Final Judgment in the Federal Action. *Id.* at 4.

[12] "Settlements of shareholder derivative actions are particularly favored because such litigation is notoriously difficult and unpredictable." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980 (D. Minn. 2005)).

the sound discretion of the Court. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). The process of court approval of class action settlements involves (1) obtaining preliminary approval, (2) disseminating notice to the class, and (3) scheduling a fairness hearing to consider final approval of the proposed settlement. *See Carlough v. Amchem Prod., Inc.*, 158 F.R.D. 314, 320 (E.D. Pa. 1993); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2006 U.S. Dist. LEXIS 93936, at *1 (E.D. Pa. Dec. 28, 2006).

Preliminary approval "is granted unless a proposed settlement is obviously deficient." *Jones v. Commerce Bancorp., Inc.*, No. 05-5600, 2007 U.S. Dist. LEXIS 52144, at *4 (D.N.J. July 16, 2007). There is an initial presumption of fairness when a proposed settlement that has been negotiated at arm's length by counsel (which was plainly the case here) is presented to the court for approval. *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 491 (E.D. Pa. 2003); NEWBERG at § 11.41, p. 90.

When deciding preliminary approval, a court does *not* conduct a "definitive proceeding on the fairness of the proposed settlement, and the judge must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983); *see also In re Gen. Motors*, 55 F.3d at 785 (holding that the "preliminary determination establishes an initial presumption of fairness"). Instead, on preliminary approval, courts in this circuit have recognized that:

> [T]he Court is required to determine only whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval.

*Mehling*, 2007 U.S. Dist. LEXIS 79451, at *6 (internal citations omitted) (quoting *Thomas v.*

*NCO Fin. Sys.*, 2002 U.S. Dist. LEXIS 14157, at 14 (E.D. Pa. July 31, 2002)).  In sum, the final

assessment of the fairness, reasonableness, and adequacy of a proposed settlement is a matter for

determination at the final approval hearing, *see In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d

631, 638 (E.D. Pa. 2003), whereas the standard for preliminary approval is simply whether the

settlement is free of "obvious defects" and "falls within the range of possible approval" so as to

warrant issuance of notice to the class and the scheduling of a final approval hearing.

### 2.  The Proposed Settlement Meets the Standard for Preliminary Approval.

The Court should preliminarily approve the proposed Settlement because (1) it is the

product of arms-length, informed negotiations; (2) the Settlement has no "obvious deficiencies"

and falls firmly with the range for approval; (3) the Settlement does not grant improper treatment

to any members of the class; and (4) the litigation is sufficiently advanced to allow for adequate

evaluation of a proposed settlement based on relevant risks and other cost/benefit concerns.

### a.  The Settlement is the Product of Serious, Informed, and Non-Collusive Negotiations.

The Settlement is the result of the diligent efforts and intensive arm's length negotiations

among the settling parties.  The Settling Defendants have asserted (and continue to assert)

numerous defenses, and have expressly denied any wrongdoing or legal liability arising out of

the conduct alleged in this action.  Nevertheless, the Settling Defendants have decided to settle

this action in the manner and upon the terms and conditions set forth in the Stipulation in order to

avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties

of trial and appeals.

Plaintiffs' Counsel, all of whom are highly experienced in the conduct of complex

shareholder litigation, recognize the risks inherent in continuing this litigation, and that a trial in

this action against the Settling Defendants, and possible appeals, could take several years. The Plaintiffs have also taken into account the uncertain outcome and risk of litigation, especially in complex actions such as this and particularly in the economic business environment in which Commerce and TD Bank find themselves in. Plaintiffs' Counsel believe that the Stipulation confers substantial benefits upon the Class as well as upon Commerce and its shareholders. In weighing whether to continue to try to block the proposed TD Merger, Plaintiffs' Counsel have also carefully assessed the extent to which there was reason to believe that Commerce shareholders might ultimately receive a superior offer for their Commerce shares, particularly in light of recent troubles in the banking industry. Based upon their evaluation of the issues in this litigation and with the advice they received from their retained financial expert, Plaintiffs' Counsel have determined that the Settlement is in the best interests of the Class, Commerce and its shareholders.

Furthermore, the Settlement was the product arms-length negotiations. For example, the Settlement was reached under the auspices of a mediation conducted by retired Magistrate Judge Rosen. *See In re Cigna Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51089, at *12 (E.D. Pa. July 13, 2007) ("[I]t is clear that negotiations for the settlement occurred at arm's length, as the parties were assisted by a retired federal district judge who was privately retained and served as a mediator."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (involvement of a mediator or other third parties in settlement discussions is "further evidence of the arm's length . . . nature" of the settlement); *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000) (approving a settlement where mediation kept "the parties . . . at significantly greater than arm[']s length."); *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 262-63 (S.D.N.Y. 1998) (finding that "the third-party mediation process was an appropriate measure for arm's length

negotiations")

The Settlement was also the product non-collusive negotiations. Before the mediation session, the parties had not reached any agreements on any settlement terms, and, indeed, had significant differences of opinion on virtually every issue. After mediation ended on December 28, 2007 without resolution, the mediator and the parties' counsel continued talks through December 31, 2007. After executing a Memorandum of Understanding on January 4, 2008, the parties continued to negotiate appropriate language to ensure that the written Stipulation accurately reflected the agreed-upon terms.

>    **b.      The Settlement Has No "Obvious Deficiencies" and Falls Within the Range for Approval.**

The Settlement also has no "obvious deficiencies" and is well within "the range of possible approval." *See Smith v. Prof'l Billing & Management Servs., Inc.*, 2007 U.S. Dist. LEXIS 86189, at *4 (D.N.J. Nov. 21, 2007) (quoting *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). Here, the Settlement encompasses both class and derivative actions. Although the Court must only evaluate the Settlement here under the particularly lenient standards for preliminarily approval, here the Settlement plainly provides significant benefits for both the Company and proposed Class and therefore falls within the range for approval.

Here, the Settlement provides important transparency to and additional disclosures concerning the proposed merger between Commerce and TD Bank, which corrects the Preliminary Proxy statement's material inadequacies and will allow shareholders to make an informed decision when voting. This transparency arose from discussions between Plaintiffs' Counsel and Defendants' counsel, resulting in the Final Proxy, filed with the SEC on January 4, 2008, which included material disclosures that were not set forth in the Preliminary Proxy filed

with the SEC prior to the negotiation of the Settlement.  These disclosures provided important

additional material information for the benefit of Class members, including:

- The correct timing of when Commerce's Board began to consider whether to pursue certain strategic options, who they consulted with, and when they met to discuss these alternatives;
- The fact that the Board's advisor on strategic alternatives, Goldman Sachs, had previously provided investment banking services to a number of institutions on a regular basis, including, among others, TD Bank;
- The timing and manner in which Defendant Norcross expressed his personal interest in purchasing Commerce's insurance subsidiary, CBIS;
- The identity of members of the Board that comprised the special committee of independent directors charged with evaluating Defendant Norcross's bid to purchase CBIS;
- The identity of members of the Special Committee of the Board who were responsible, along with Norcross, for overseeing the process in which a possible strategic transaction with TD Bank would be explored;
- The per share range contained in TD Bank's preliminary indication of interest in purchasing Commerce;
- The effect that the regulatory actions on Commerce's deposit growth; and
- The existence of concern about retaining senior management given the regulatory hurdles it had to overcome following Hill's termination and that this was the basis behind the renegotiation of employment agreements with 21 members of Commerce's upper management.

*See* "Red-lined" Proxy Statement, attached hereto as Exhibit D.  Further, the Settlement provides

for the modification of the Merger Agreement terms, resulting in a reduction of the break up or

"termination" fees from $332 to $255 million, and a reduction of the "tail" from 15 months to 12

months, which will allow for greater opportunity for Commerce to consider alternate potential

strategic acquisitions if they arise.

Although the Settlement confers non-monetary benefits, courts evaluating the fairness of

settlements for final approval have noted that "despite the difficulties they pose to measurement,

non-pecuniary benefits to the corporation may support a settlement …. This is particularly true

when the relief is intended to prevent future harm." *United Nat'l Retirement Fund v. Watts*,

2005 U.S. Dist. LEXIS 26246, at *8-9 (D.N.J. 2005) (approving final settlement that provided

for positive effects on board governance, overall compliance, among other things) (quoting *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993)). *See also In re Triarc Cos., Inc. Class and Deriv. Litig.*, 791 A.2d 872, 878 (Del. Ch. 2001) (finding non-monetary settlement of corporate disclosures fair and reasonable when "claims asserted on behalf of the stockholder class had little or no chance of recovering money damages (even nominal damages)."); *In re Golden State Bancorp Inc. S'holders Litig.*, 2000 Del. Ch. LEXIS 8, at *9 (Del. Ch. Jan. 7, 2000) (approving and finding non-monetary settlement fair when disclosures were material to investors voting on proposed merger transaction).

As in those cases, the obstacles to obtaining monetary damages in this case are great. Among other significant obstacles to recovering damages are the fact that Defendants would argue that Goldman Sachs advised that the deal *is* fair and rendered a "fairness opinion" in support of it. Also, as supported through testimony and documents, TD Bank made clear that it would not pay more than its current offer for Commerce, and there were no other potential acquirers willing to pay as much as TD Bank. Indeed, as Plaintiffs confirmed in discovery, there was only one other potential acquirer that even submitted a preliminary bid to acquire Commerce, and current market circumstances have had a substantial impact on that company and its stock price. Also, Defendants would certainly argue that the price of the proposed transaction is line with -- if not positively generous in light of -- comparable evaluations, including the price of the deal versus stock price, and the price of the deal versus core deposits. While Plaintiffs believe that they have arguments in response to these points, they present very significant hurdles to recovering monetary damages.

In addition to the corporate governance benefits conferred by the Settlement, the Settlement also provides additional derivative benefits. The Settlement provides for

Commerce's review of certain transactions between Commerce and Hill, aided by the derivative actions' identification and preservation of potential claims against Hill. Further, Commerce, based on information supplied by Derivative Plaintiffs, has asserted its right against InterArch and others to recover $1.6 million in overpayment.[13]  Inasmuch as Hill has sued Commerce and certain of its directors for $50 million, this part of the Settlement conveys an important benefit.

Given the complexity of this case, the potential defenses and uncertainties of proof of both liability and damages, the proposed Settlement is well within the range of possible approval and has no obvious deficiencies.

**c.      The Settlement Does Not Improperly Grant Preferential Treatment to Class Representative or Segments of the Class.**

The relief provided in the Settlement will benefit all Class Members equally.  It provides injunctive relief in the form of the Company's actions, in the form of corporate governance changes, additional material disclosures that allow shareholders to make an informed decision regarding the proposed Merger, specific investigations into Defendant Hill and Interarch, Inc., and changes to the terms of the proposed Merger.  These actions will positively impact both the Company and Class as a whole.  The Settlement does not grant any preferential treatment to the Class Representatives or segments of the Class.

**d.      The Proceedings are Sufficiently Advanced to Permit Preliminary Approval of the Settlement.**

The stage of the proceedings at which this Settlement was reached militates in favor of preliminary approval and, ultimately, final approval of the Settlement.  The agreement to settle did not occur until after Plaintiffs' Counsel had conducted extensive discovery, including the review of documents, numerous consultations with Plaintiffs' financial advisor, discussions with

---

[13] In fact, Commerce has already commenced suit to recover that money.

opposing counsel regarding the full scope of discovery produced, and depositions of key personnel involved in the proposed transaction. Further, the derivative claims have been litigated in the case for nearly one year. Over this year, Plaintiffs' Counsel engaged in countless discussions with Counsel for Commerce and met with counsel for the SLC on at least three occasions in addition to reviewing documents produced by Commerce and/or obtained otherwise. Plaintiffs' Counsel only entertained settlement possibilities after discovery closed in connection with their motion for preliminary injunction, and after they had acquired sufficient information to make an informed judgment regarding the likelihood of success and the results that could be obtained through further litigation versus settlement.

**B.      THE PROPOSED NOTICE PLAN SHOULD BE PRELIMINARILY APPROVED.**

The Federal Rules of Civil Procedure provide that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement …." Fed. R. Civ. P. 23(e)(1)(B).  The Rules further provide:

> For any class certified under Rule 23(b)(3), the court must direct to the class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: [A] the nature of the action; [B] the definition of the class certified; [C] the class claims, issues, or defenses; [D] that a class member may enter an appearance through counsel if the member so desires; [E] that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; [F] the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  Further, as applicable to derivative actions, Rule 23.1 provides:

> A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders.

23

Fed. R. Civ. P. 23.1(c). Such a notice complies with due process requirements. *See Phillips Petroleum v. Shutts*, 472 U.S. 797, 812 (1985). Authorization to disseminate notice is recognition by the Court that the settlement is in the range of possible approval. *See, e.g., In re Chambers Dev. Co. Secs. Litig.*, 912 F. Supp. 822, 827 (W.D. Pa. 1995). It is akin to "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Assoc. -- Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980). The Notice Plan set forth below satisfies the requirements of Rule 23 and due process, and therefore should be approved.

The proposed Notice Plan has multiple parts: (1) individual mailed Notice to all members of the Class, in the form attached as Exhibit C to the Stipulation within ten (10) business days after entry of the Court's Order preliminarily approving the Settlement, (2) publication of a Summary Notice in *The Wall Street Journal*, *The New York Times*, *The Philadelphia Inquirer* and the *Camden Courier-Post*, (3) posting on the websites of Commerce and Plaintiff's Liaison Counsel the Second Amended Complaint, the Stipulation and documents to be filed by the parties in support of the proposed Settlement, and (4) the issuance of a press release containing the Summary Notice through the auspices of PR Newswire.

The Notice Plan specified above constitutes valid and sufficient notice to the Class and present Commerce shareholders, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23. *See, e.g., Zimmer Paper Prod., Inc. v. Berger & Montague P.C.*, 758 F.2d 86, 90-91 (3d Cir. 1985), *cert. denied*, 474 U.S. 902 (1985).

## C.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.

In connection with preliminary approval, Plaintiffs request that the Court certify the

following Class pursuant Rule 23(b)(1) and Rule 23(b)(2), for purposes of settlement only, as

defined in the Stipulation:

> All record and beneficial holders of common stock of Commerce
> at any time from October 2, 2007 through the consummation of the
> Merger, and their respective heirs, executors, administrators,
> representatives, agents, successors, transferees and assigns
> (excluding Settling Defendants, Mr. Hill, and/or any person, firm,
> trust, corporation or other entity who is a family member of Mr.
> Hill or an affiliate of the Settling Defendants or Mr. Hill as the
> term "affiliate" is defined in the Securities and Exchange Act of
> 1934 and SEC Rule 12b-2 promulgated thereunder).

*See* Stipulation, attached as Exhibit A, at ¶ 5.

One of this Court's functions in reviewing a proposed settlement of a class action is to

determine whether the action may be maintained as a class action under Rule 23 of the Federal

Rules of Civil Procedure. *See Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). A class may be

"conditionally certified even for the purpose of settlement only if it conforms to the requirements

of Rule 23." *See Hall v. Midland Group*, 1999 U.S. Dist. LEXIS 17832, at *2 (E.D. Pa. Nov. 22,

1999) (citing *Amchem*, 521 U.S. 591). A court deciding whether to certify a class for settlement

purposes only must engage in a two step analysis to determine whether the class (1) meets the

requirements of Rule 23(a) and (2) one of the sub-sections of Rule 23(b). *See In re Ins.*

*Brokerage Antitrust Litig.*, 2007 U.S. Dist. LEXIS 65037, at *59 (D.N.J. Sept. 4, 2007). Though

both of these requirements must be met, "the fact of the settlement is relevant to a determination

of whether the proposed class meets the requirements imposed by the Rule." *Hall*, 1999 U.S.

Dist. LEXIS at *2. Further, in certifying a class for settlement purposes only, the Court need not

determine "whether the case, if tried, would present intractable management problems, *see* Fed.

Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Id.* (quoting *Amchem,* 521

U.S. at 619).

Rule 23(a) sets forth four prerequisites to class certification. "These four requirements are

referred to in the short-hand as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *In re Corel Corp. Sec. Litig.*, 206 F.R.D. 533, 539 (E.D. Pa. 2002). In addition, for purposes of certifying a settlement, plaintiffs must satisfy the requirements of one or more of the three subsections of Rule 23(b), in this case, 23(b)(1) and 23(b)(2).

### 1.    Rule 23(a)

The proposed Class satisfies each of Rule 23(a)'s prerequisites.   The proposed Class, which numbers, at a minimum, over thousands of members spread across the United States, is sufficiently numerous because the number and diverse location of the putative class members is such that it is impractical to join all of the Class members in one lawsuit, thereby satisfying Rule 23(a)(1). *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 209 (3d Cir. 1998), cert. denied 525 U.S. 1114 (1999).

Rule 23(a)(2) is satisfied when the proposed Class representatives share at least one question of fact or law with the claims of the prospective class. *See Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  Only one common question need exist. *Prudential*, 148 F.3d at 310. When plaintiffs have alleged that defendants have breached their fiduciary duties, which represents standardized conduct affecting the class as a whole, courts have found that the commonality requirement is satisfied. *See id.* at 310; *Mehling*, 2007 U.S. Dist. LEXIS at *15. Here, the crux of the class allegations surround Defendants' breach of their fiduciary duties to Commerce shareholders, the members of the Class.  Therefore, this common question satisfies the requirement of Rule 23(a)(2).

The typicality requirement, Rule 23(a)(3), is also satisfied where, as here, the named parties' interests are aligned with that of the Class.  In this case alleging breaches of fiduciary duty in connection with the proposed transaction, all Class members share an interest in

demonstrating a need for relief from the inadequate disclosures and dealings associated with the

Merger and corporate governance.   Since Plaintiffs must prove the elements of the breach of

fiduciary duty, bad faith dealings, and the aiding and abetting of the transaction by TD Bank, the

same as all Class members, their claims are based on the same factual and legal theories and can

hardly be considered atypical.  *In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*, 2006 U.S.

Dist. LEXIS 16619, *15-16 (D.N.J. Apr. 4, 2006); *In re Plastic Cutlery Antitrust Litig.*, No. Civ.

96-CV-728, 1998 U.S. Dist. LEXIS 3628, at *10 (E.D. Pa. Mar. 20, 1998).  Therefore, Rule

23(a)(3) is satisfied.

Likewise, Plaintiffs will "fairly and adequately protect the interests of the class," thereby

satisfying Rule 23(a)(4).  This two-pronged requirement is met when a class representative has

no interests antagonistic to those of the class and its attorneys are competent to conduct a class

action.  *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 207 (E.D. Pa. 2001).  No conflict of

interest exists among Plaintiffs and the Class, let alone a conflict that presents an obstacle to

class certification.  *See, e.g.*, *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 482 (W.D. Pa.

1999) (conflict precludes certification only if "apparent, imminent, and on an issue at the very

heart of the suit") (citation omitted).   Plaintiffs, both individual and institutional, have

vigorously litigated this case, engaged in discovery, and have demonstrated their ability to

represent the Class.  Likewise, as demonstrated through the course of this litigation, Plaintiffs'

Counsel has extensive experience, resources, skill, and success litigating class actions.[14]

The presence of derivative claims does not affect the adequacy analysis here.  As an

initial matter, ensuring the procedural and structural fairness that *Amchem* contemplated, State

---

[14] Exhibits E to I are the firm resumes for Trujillo Rodriguez & Richards, LLC; Motley Rice
LLC; Greenfield & Goodman, LLC; Barrack Rodos & Bacine; and Bernstein Litowitz Berger &
Grossman.

Court Co-Lead Counsel actively participated in the discovery and settlement negotiations on behalf of their clients. These plaintiffs asserted only class claims, and their assent to the settlement was a necessary condition for the agreement. Moreover, when specifically confronted with this issue, Judge Fratto in the State Court Action, found that the derivative and class claims here were complementary, not antagonistic. Indeed, several state court complaints specifically alleged that the proposed Merger transaction was motivated, in part, based on the Individual Defendants' desire to extinguish the derivative claims. Further, the Class has common interests as the derivative claims, as a reduced termination fee and tail, and fuller and complete proxy statement disclosures, benefit the Class and Company alike.

Numerous courts have recognized that derivative and class actions can be consolidated or otherwise proceed as one action without conflict. As one court has observed, "the case law is virtually unanimous in holding that one counsel can represent a stockholder bringing *both* an individual and *derivative* action." *In re Dayco Corp. Derivative Secs. Litig.*, 102 F.R.D. 624, 630 (S.D. Ohio 1984) (citing *Heilbrunn v. Hanover Equities Corp.*, 259 F. Supp. 936, 939 (S.D.N.Y. 1966)). In fact, both state and federal courts commonly consolidate actions brought by shareholders directly, including in the form of class actions, and derivatively.[15] Given the

---

[15] *See, e.g., Berlin v. Emerald Partners*, 552 A.2d 482, 484 (Del. 1988) (shareholder brought suit to enjoin merger "individually, and subsequently amended its complaint to allege class and derivative claims"); *In re Tyson Foods, Inc.*, 919 A.2d 563, 571 (Del. Ch. 2007) (shareholder filed action with "both class action and derivative complaints for breaches of fiduciary duty and proxy disclosure violations"); *TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, 2000 Del. Ch. LEXIS 147, at *6-7 (Del. Ch. Oct. 17, 2000) (consolidating multiple derivative, class and individual actions); *In re 3COM Corp.*, 1999 Del. Ch. LEXIS 215, at *3 (Del. Ch. Oct. 25, 1999) ("Plaintiffs sue 1) derivatively for corporate waste and breach of fiduciary duty of loyalty and 2) in a class action, on behalf of all 3COM shareholders, for breach of the 'duty of candor.'"); *Lee v. Engle*, 1995 Del. Ch. LEXIS 149, at *3 (Del. Ch. Dec. 15, 1995) (court issued discovery order in shareholder-filled derivative suit and class action alleging breaches of fiduciary duty, waste of corporate assets, failure to pay dividends, and violation of the duty of disclosure with regard to proxy statement); *Lewis v. Great W. United Corp.*, 1978 Del. Ch. LEXIS 723 (Del. Ch. Mar. 28,

commonality of interests shared by the Derivative Plaintiffs and Class plaintiffs, as well as the

benefits conferred to both the Company and to the Class, the presence of the derivative claims

does not affect the adequacy of the proposed Class Representatives.

### 2.   Rule 23(b)(1)

Rule 23(b)(1) requires that a class meet the requirements of Rule 23(a) and:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

Fed. R. Civ. P. 23(b)(1). Essentially, class certification is appropriate under Rule 23(b)(1)(B)

when "adjudication of separate, individual actions might be dispositive of the interests of class

members who are not parties to the action." *Mehling*, 2007 U.S. Dist. LEXIS at *19 (quoting

*Godshall v. Franklin Mint Co.*, 2004 U.S Dist LEXIS 23976, at *9 (E.D. Pa. Dec. 1, 2004)). As

courts have recognized in the context of allegations of breach of fiduciary duty in conjunction

with ERISA plans, 23(b)(1)(B) class certification is appropriate when any decision as to whether

defendants breached their fiduciary duty affects *all* members to whom defendants owed a

fiduciary duty. *See Mehling*, 2007 U.S. Dist. LEXIS at *19-20 (quoting *In re IKON Office*

*Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000)). *See also Rankin v. Rots*, 220

F.R.D. 511, 523 (E.D. Mich. 2004) (certifying a class in breach of fiduciary duty action under

Rule 23(b)(1)(A) and (B), in part, because "failure to certify a class could expose defendants to

---

1978) (parties settled action where shareholder filed derivative and class action suit to enjoin proposed merger); *Glauser v. EVCI Cir. Colls. Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006) (consolidating separately filed derivative and class actions).

multiple lawsuits and risk inconsistent decisions."). Here, the Settlement Class should be

certified pursuant to Rule 23(b)(1)(B) because a decision regarding Defendants' breach of

fiduciary duty, bad faith, or fairness of the proposed deal with TD Bank would necessarily affect

and be dispositive of the interests of all Commerce shareholders in the Class.

### 3.   <u>Rule 23(b)(2)</u>

Under Rule 23(b)(2), the court must find that:

> (2) the party opposing the class has acted or refused to act on
> grounds generally applicable to the class, thereby making
> appropriate final injunctive relief or corresponding declaratory
> relief with respect to the class as a whole.

Fed. R. Civ. P. 23(b)(2). Courts have interpreted the rule to require two showings: 1) the relief

sought must be predominantly injunctive or declaratory and 2) the defendants acted or refused to

act on grounds generally applicable to the class. *See, e.g., Mehling*, 2007 U.S. Dist. LEXIS at

*20. Plaintiffs seek injunctive relief exclusively. Further, as recounted above, Defendants'

conduct applies, by definition, to the entire class, to whom they owed a fiduciary duty.

Therefore, given the above, Plaintiffs' claims allow for certification of the proposed Class under

Rule 23(b)(2).

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant the motion for preliminary approval,

approve the Notice Plan and authorize the dissemination of notice as provided in exhibits to the

Stipulation, and certify the Settlement Class, by entering the Proposed Order submitted herewith.

Date:   January 22, 2008          **TRUJILLO RODRIGUEZ & RICHARDS, LLC**

s/ Lisa J. Rodriguez
Lisa J. Rodriguez
8 Kings Highway West
Haddonfield, NJ 08033
(856) 795-9002

and

Ira Neil Richards
R. Andrew Santillo
TRUJILLO RODRIGUEZ & RICHARDS, LLC
1717 Arch Street, Suite 3838
Philadelphia, PA 19103
(215) 731-9004

Richard D. Greenfield
GREENFIELD & GOODMAN LLC
780 Third Avenue, 48th Floor
New York, NY 10017
(917) 472-4487

***Attorneys for Plaintiff Lucas***

Ann Kimmel Ritter
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mt. Pleasant, SC 29465
(843) 216-9166

and

Michael L. Testa
BASILE & TESTA, P.A.
424 Landis Avenue
Vineland, NJ 08360
(856) 691-2300

Seth D. Rigrodsky
Brian D. Long
RIGRODSKY & LONG, P.A.
919 North Market Street, Suite 980
Wilmington, DE 19801
(302) 295-5305

***Attorneys for Plaintiff Sheetmetal Workers***

Ann Miller
ANN MILLER LLC
843 Chestnut Street, Suite 206
Philadelphia, PA 19107
(215) 238-0468

***Attorney for S.L. Lerner***

31

Jeffrey W. Golan
M. Richard Komins
Beth Targan
Lisa Lamb
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
(215) 963-0600

***Attorneys for Plaintiff Louisiana Municipal Police
Employees' Retirement System***

William C. Fredericks
David Webber
John Rizio-Hamilton
BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

***Attorneys for Plaintiff Police & Fire Retirement
System of the City of Detroit***